■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANDRE SPELLMAN, Appellant.—Judgment, Supreme Court, New York County (Rose L. Rubin, J., at *Huntley* hearing, jury trial, and sentence), rendered November 22, 1983, convicting defendant of two counts of murder in the second degree, two counts of burglary in the first degree, two counts of robbery in the first degree, and one count of robbery in the second degree, and sentencing him to two indeterminate prison terms of from 15 years to life and five indeterminate prison terms of from 2 to 6 years, all to run concurrently, unanimously affirmed.

On November 10, 1982, the body of Jesse Petchers, whose skull had been cracked open, was discovered in his burglarized apartment at 33 Riverside Drive. Petchers had allowed defendant, defendant's brother Robert, and defendant's mother to live with him until a week or so before the murder. On November 11, 1982, defendant voluntarily went to the 20th Precinct where he eventually made both a written and video-

taped confession. The first two statements defendant made, which were exculpatory, contained inconsistencies which caused the police to believe defendant was lying. Detective Clark told defendant that he was lying, that he better tell the truth or he would be digging a deeper hole, and ripped up each statement. He emphasized the seriousness of the crime and told defendant that he thought he was "involved". Furthermore, even though it was untrue, Clark told defendant that the police found his fingerprints on the fire hose nozzle. After an hour-and-45-minute lunch break, at approximately 4:20 P.M., *Miranda* warnings were administered to defendant and he made an inculpatory written statement. A videotape statement was taken shortly thereafter.

Although the facts suggest that prior to the *Miranda* warnings, defendant was subjected to police questioning which was accusatory in nature, we believe that under the totality of the circumstances, a reasonable person, innocent of any crime, would not conclude that he was in police custody *(People v Centano,* 153 AD2d 494, *affd* 76 NY2d 837). Furthermore, although the police used deceptive tactics and accused defendant of lying, the environment was not so coercive as to render defendant's confession involuntary *(People v Tarsia,* 50 NY2d 1). Furthermore, defendant was not entitled to suppression on the grounds that the interrogating police officers had an obligation to determine whether defendant was represented by counsel on two pending juvenile criminal matters. *(People v Bing,* 76 NY2d 331.)

Finally, where the same prosecutor who took defendant's videotape statement conducted the trial, the court acted within its discretion in denying defendant's untimely requests during trial to redact the videotape statement and to require a different prosecutor to deliver summation argument *(People v Paperno,* 54 NY2d 294). We would also note that defendant has failed to support his contention that the prosecutor's opinions and beliefs were manifest on the videotape *(compare, People v Blake,* 139 AD2d 110). Concur—Carro, J. P., Asch, Kassal and Smith, JJ.